[Civ. No. 27752. Fourth Dist., Div. Two. Dec. 23, 1982.]

LUTHER T. FAIR, Plaintiff and Appellant, v.
RALPH HERNANDEZ, Defendant and Respondent.

COUNSEL

Allard, Shelton & O'Connor and Gary C. Wunderlin for Plaintiff and Appellant.

Garza & Jure, Florentino Garza, Horvitz & Greines, Kent L. Richland and Alan G. Martin for Defendant and Respondent.

## Opinion

## TROTTER, J.—

### Facts

The present case is an election contest for the Third Ward seat on the Common Council of the City of San Bernardino. This marks the second time that the case has been before us. Briefly, Fair was one of two runoff candidates on the printed ballot for the seat. Hernandez was a legally qualified write-in candidate.

After the election, Hernandez was declared the winner. Fair filed an election contest. After proceedings before a special master, the trial court determined that Hernandez received 756 uncontested votes, Fair received 773 uncontested votes, and 76 votes were contested. The trial court ruled on the contested votes after taking extensive evidence, and finally determined that Hernandez received 796 votes and Fair received 794 votes. The court entered judgment confirming Hernandez's election.

Fair appealed, challenging the trial court's determinations on 36 of the contested ballots. On that appeal we determined that the trial court had erroneously allowed 5 contested ballots for Hernandez, and that Hernandez's total was therefore reduced to 791. (See *Fair v. Hernandez* (1981) 116 Cal.App.3d 868, 875-877, 878 [172 Cal.Rptr. 379].)

However, in controlling the order of proof, the trial court did not require Hernandez to go forward unless, after Fair concluded his presentation, Fair had more votes than Hernandez. Since the trial court had ruled that Hernandez had more votes, Hernandez had not had an opportunity to pursue the defenses and contentions he had raised below. Accordingly, we reversed and remanded the cause for further proceedings to allow Hernandez to go forward with his defense. (*Id.*, at p. 880.)

Further trial was held in which Hernandez attacked 11 ballots which had previously been counted for Fair. The court sustained the challenges to the 11 ballots and deducted those ballots from Fair's total. The final count was thus 791 for Hernandez and 783 for Fair. Once again, the court entered judgment confirming Hernandez's election. Fair appeals.

### Issues

The objection raised by Hernandez to the 11 ballots was that the 11 absentee ballots had been delivered to the city clerk by Fair's campaign worker, and that this delivery violated Elections Code section 1013. The trial court found that

the delivery did violate section 1013, and invalidated those ballots. Fair argues that (1) these ballots had already been confirmed to Fair at the first phase of the trial, and that therefore the trial court was without authority to deduct those votes, and (2) the delivery by the campaign worker did not violate section 1013.

## DISCUSSION

### 1. *Authority of the Trial Court to Rule on the Ballots*

Fair contends that, at the conclusion of the first phase of the trial, the court ruled that the 11 ballots "were properly cast," and that, since this particular finding was not challenged in the first appeal, the court was without power to rule that the ballots should be rejected.

Fair is incorrect. The last time this case was here, we specifically noted that, because the trial court had not required Hernandez to proceed with his case, "[a]s a result Hernandez has not affirmatively pursued defenses and contentions raised below, and he should have the opportunity to do so." (*Fair* v. *Hernandez, supra,* 116 Cal.App.3d 868, 880.) The issue of the personal delivery of the ballots is just such an issue as had been reserved to Hernandez and it was proper for him to pursue it on remand.

A review of the prior record in this case shows that the primary issue to which the court addressed its findings in the first phase of the trial was whether the 11 ballots were timely received by the city clerk. Moreover, contrary to Fair's contention, Hernandez could not have cross-appealed from the finding of fact, as the judgment was in his favor. (*Muchenberger* v. *City of Santa Monica* (1929) 206 Cal. 635, 646 [275 P. 803]; *Gosney* v. *State of California* (1970) 10 Cal.App.3d 921, 928 [89 Cal.Rptr. 390].) The earlier finding of fact did not preclude Hernandez's challenge to the 11 ballots.

### 2. *Delivery of the Ballots by a Third Party*

Fair next contends that, even though one of Fair's campaign workers delivered the ballots to the city clerk, this method of delivery did not violate section 1013.

We begin our analysis with the code section itself. Section 1013 provides: "After marking the ballot, the absent voter may return it to the official from whom it came *by mail or in person,* or may return it to any member of a precinct board at any polling place within the jurisdiction. The ballot must, however, be received by either the official or the precinct board before the close of the polls on election day.

"The official shall establish procedures to insure the secrecy of any ballot returned to a precinct polling place." (Italics supplied.)

Hernandez argued below that this section means that the ballots must be returned personally by the voter without the use of another person or agent.

We agree. Although this interpretation is not completely free of difficulties, a common sense approach to the reading of the statute requires this result. First of all, it is clearly the purpose of the statute to preserve the secrecy, uniformity, and integrity of the voting process. (See *McFarland* v. *Spengler* (1926) 199 Cal. 147, 152 [248 P.521].) Requiring personal delivery of the absentee ballot by the voter avoids potential problems affecting the secrecy, uniformity and integrity of the absent voter's franchise. As Justice Kaufman pointed out when this case was last before us, "[P]reservation of the integrity of the election process is far more important in the long run than the resolution of any one particular election." (*Fair* v. *Hernandez, supra,* 116 Cal.App.3d 868, 881, conc. opn. of Kaufman, J.) This important policy is admirably served by the interpretation we have placed on the statute.

Such authorities as are available on the subject support the conclusion that personal delivery is required. The Attorney General in 1979 issued an opinion on this very question, stating that section 1013 required the absent voter to return the ballot personally or by mail. The Attorney General noted that section 1017 provides under special circumstances for delivery of an absentee ballot by an authorized representative. The Attorney General then stated that, "From a comparison of the language of section 1013 with section 1017, if the Legislature intended to include delivery by an authorized representative in section 1013 it is reasonable to conclude it would have done so." (62 Ops.Cal. Atty.Gen. 439, 443 (1979).)

*Beatie* v. *Davila* (1982) 132 Cal.App.3d 424 [183 Cal.Rptr. 179], cited by Fair in support of his contention that third party delivery is proper, actually supports the opposite rule. *Beatie* involved the question whether an absent voter may use a third party to return the ballot by mail. The *Beatie* court asked the question, "Why would the Legislature require the voter to deliver his absentee ballot personally to the elections official and yet allow him to utilize a third party for mailing it to the official? We think the answer to the question is clear. The Legislature recognized the impossibility of policing the act of mailing by the absentee voter . . . ." (*Id.,* at p. 429.) Thus, for practical reasons, delivery by mail might be made by a third party, but implicit in the argument and in the statute is the requirement that delivery "in person" means personal delivery, since personal delivery can be policed.

Moreover, the integrity and secrecy of the process are such important interests that ballots may be voided even though it is not shown that the ballots were actually tampered with. (See *Garrison* v. *Rourke* (1948) 32 Cal.2d 430, 443 [196 P.2d 884], overruled on another point in *Keane* v. *Smith* (1971) 4 Cal.3d 932, 939 [95 Cal.Rptr. 197, 485 P.2d 261].)

Reason and authority both support the judgment of the trial court that delivery by a third party to the city clerk was improper under the statute. The rule requiring personal delivery clearly serves the paramount purpose of preserving the secrecy, uniformity, and integrity of the voting process.

DISPOSITION

The judgment confirming Hernandez's election is affirmed.

Kaufman, Acting P. J., and McDaniel, J., concurred.