Lani SOULES, Lafrance Kapaka, Paul Lemkey, Carol Lemkey, Clara G. Rapozo, Alice Souza, Deane B. Abben, Lois A. Birnbaum, Margaret Littman, Masao Mixumo, Registered Voters of the County of Kauai, on behalf of themselves and all other voters of the County of Kauai, Committee to Save Nukolii, Plaintiffs,

v.

KAUAIANS FOR NUKOLII CAMPAIGN COMMITTEE, Jerome Y.K. Hew, in his official capacity as Clerk of the County of Kauai, County of Kauai, Kauai County Council, Does I Through X, Defendants,

and

Graham Beach Partners, Intervenor Defendant.

Civ. No. 84–0297.

United States District Court, D. Hawaii.

March 18, 1985.

Robert Harris, Harris & Smith, Honolulu, Hawaii, Sidney M. Wolinsky, Robert L. Gnaizda, Anita P. Arriola, Public Advocates, Inc., San Francisco, Cal., for plaintiffs.

Yoshio Shigezawa, Honolulu, Hawaii, for Kauaians for Nukolii.

Michael J. Belles, Co. Atty., Warren C.R. Perry, Second Deputy Co. Atty., Lihue, Hawaii, for Jerome Y.K. Hew, County of Kauai and Kauai County Council.

Michael N. Nii, Lihue, Hawaii, for Kauai Chamber of Commerce, et al.

Edward A. Jaffe, Milton M. Yasunaga, Wallace Fujiyama, Paul H. Sato, Honolulu, Hawaii, Walton D.Y. Hong, Lihue, Hawaii, for Graham Beach Partners.

## ORDER GRANTING IN PART MOTIONS TO STRIKE AND GRANTING INTERVENOR'S AND DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

FONG, Chief Judge.

### BACKGROUND

This is an action brought in the federal court to challenge a special initiative election held in the County of Kauai on February 4, 1984.

Plaintiffs have sought under 42 U.S.C. § 1983 the following relief for the alleged violations of their equal protection, due process, and First Amendment rights: (1) a declaratory judgment pursuant to 28 U.S.C. § 2201; (2) an order invalidating the election or the results of the special election; (3) general and special damages to plaintiffs for expenditures in being forced to campaign in the allegedly unconstitutional and illegal election; and (4) costs and attorney's fees.

On July 10, 1984, two motions came on for hearing before this court: First, plaintiffs sought a preliminary injunction to enjoin defendants and all persons in active concert with them from treating as valid, from effectuating or certifying or allowing action to be taken based upon the validity of the results of the election. Second, defendants and intervenor sought summary judgment against the plaintiffs on the grounds of res judicata and laches.

The court denied the plaintiffs' motion for a preliminary injunction. The court granted defendants' motion for summary judgment against plaintiffs on their claim to invalidate the election, on the grounds that the doctrine of laches barred such equitable relief. The court denied defendants' motion for summary judgment against plaintiffs on their claims for declaratory relief and damages, on the grounds that such relief was unavailable in the limited action before the Hawaii Supreme Court, and the doctrine of res judicata does not bar plaintiffs' claims.

On December 3, 1984, the court filed its "Order Granting in Part and Denying in Part Intervenor's and Defendants' Motion for Summary Judgment and Denying Plaintiffs' Motion for Preliminary Injunction," which included extensive Findings of Fact and Conclusions of Law. The court incorporates into its present order all such findings of fact and conclusions of law.

The court also hereby amends its order of December 3, 1984, to state that plaintiffs claim "that the defendants' conduct violated plaintiffs' civil rights under *42* U.S.C. § 1983 (rather than under *28* U.S.C. § 1983)."

The present set of motions came on for hearing before this court on December 17, 1984. Anita Arriola appeared on behalf of plaintiffs. Edward A. Jaffe, Milton M. Yasunaga, and Walton D.Y. Hong appeared on behalf of intervenor Graham Beach Partners. Yoshio Shigezawa appeared on behalf of Kauaians for Nukolii Campaign Committee ("Kauaians for Nukolii"). Warren C.R. Perry appeared on behalf of Jerome Y.K. Hew, the County of Kauai, and the Kauai County Council ("County Council").

The intervenor and defendants (sometimes collectively referred to as "defendants") have filed the following motions:

First, defendants now move to strike portions of plaintiffs' affidavits, on the grounds that they do not satisfy the requirements of Fed.R.Civ.P. Rule 56(e).

Second, defendants move for summary judgment against plaintiffs on the remainder of plaintiffs' claims. Defendants argue that there are no genuine issues of material fact and that they are entitled to judgment as a matter of law.

Finally, the County defendants (Jerome Y.K. Hew, the County of Kauai, and the Kauai County Council) additionally argue that their respective immunities entitle them to summary judgment as a matter of law.

## DEFENDANTS' MOTIONS TO STRIKE

Defendants object to extensive portions of the affidavits offered by plaintiffs in support of their opposition memorandum, on the ground that the affidavits do not comply with the requirements of Fed.R. Civ.P. 56(e), which states that the affidavits "shall be based on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."

Defendants argue that portions of the affidavits are improper, because they consist of hearsay, conclusions of law, assertions, arguments, or unsupported speculation; and because they are made upon belief, information, and understanding, rather than personal knowledge.

The court finds defendants' motions to be well taken, and the court will disregard those portions of the affidavits which the court finds to be in noncompliance with the requirements of Fed.R.Civ.P. 56(e).

Accordingly, IT IS HEREBY ORDERED that defendants' Motions to Strike Plaintiffs' Affidavits be, and the same are, granted in part and denied in part.

## DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

### I. Void for Vagueness Challenge to § 5.07(C)

Plaintiffs claim that Article V, § 5.07(C) of the Kauai County Charter is "void for vagueness" and violates plaintiffs' rights to due process, to freedom of expression, and to vote on the following grounds: (1) its commands do not clearly charge the persons responsible for its administration; (2) it infringes upon plaintiffs' rights to freedom of expression and to vote, by making such rights contingent upon the "totally uncontrolled will" and the "undefined and standardless discretion" of local government officials; and (3) it constitutes an unconstitutional delegation of legislative authority to the Kauai County Council. In all three claims, plaintiffs attack § 5.07(C) of the County Charter as unconstitutional on its face, because it does not provide sufficient standards for special elections.

Defendants now move for summary judgment, on the grounds that the "void for vagueness" and "improper delegation of legislative authority" doctrines do not apply to § 5.07(C), because it is a constitutional provision that delegates a legislative function to a legislative body.

Under the "void for vagueness" doctrine, "[a] *statute* is fatally vague only when it exposes a potential actor to some risk or detriment without giving him fair warning of the nature of the *proscribed conduct* (emphasis added)." *Rowan v. United States Post Office Department*, 397 U.S. 728, 740, 90 S.Ct. 1484, 1492, 25 L.Ed.2d

736 (1970). Further, although the doctrine may be applicable to civil and criminal actions, it is applicable only where *"the exaction of obedience to a rule or standard . . . was so vague and indefinite as really to be no rule or standard at all . . .* In short, the exaction must strip a participant of his rights (emphasis added)." *Boutilier v. Immigration and Naturalization Service,* 387 U.S. 118, 123, 87 S.Ct. 1563, 1566, 18 L.Ed.2d 661 (1967).

Further, courts have found an "improper delegation of legislative power" in the context of a delegation of power by the legislature to a non-legislative body, which is not directly responsible to the people. The underlying rationale is that "a congressional delegation must be accompanied by discernible standards, so that the delegatee's action can be measured for its fidelity to the legislative will." *City of Eastlake v. Forest City Enterprises, Inc.,* 426 U.S. 668, 675, 96 S.Ct. 2358, 2363, 49 L.Ed.2d 132 (1976); *see also Yakus v. United States,* 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834 (1944).

The court now looks to the nature of Article V, § 5.07(C) of the Kauai County Charter.

Article VIII, section 2 of the Constitution of the State of Hawaii states as follows:

Each political subdivision shall have power to frame and adopt *a charter for its own self-government* within such limits and under such procedures as may be prescribed by general law (emphasis added).

The Supreme Court of the State of Hawaii has spoken on the role of county charters as follows:

In drafting such a charter the commission is required to delineate the structure of the county government. In so acting it must necessarily *enumerate the powers and functions of each county department, board, commission and agency in local affairs* within such relevant limits prescribed by HRS § 50–6. Upon the adoption of the charter, it shall become *the organic law of the county superseding any existing charter and*

*all laws affecting the organization and government of the county* which are in conflict therewith (emphasis added).

*Hawaii Government Employees' Association v. County of Maui,* 59 Hawaii 65, 79, 576 P.2d 1029 (1978).

The court concludes, therefore, that the Kauai County Charter can best be characterized as the constitution of the County. The Charter, as adopted by the people, is "the organic law of the county;" its provisions allocate governmental powers—legislative, executive, and administrative—to the various parts of the County government. Article V, § 5.07(C) is one such constitutional provision, and it allocates the power to set special elections to the County Council.

■ The "void for vagueness" doctrine, therefore, does not apply to § 5.07(C), which allocates a governmental power to a branch of the County government, and which does not proscribe conduct or exact obedience under threat of sanctions. *Rowan v. United States Post Office Department, supra; Boutilier v. Immigration and Naturalization Service, supra.*

■ Furthermore, the "improper delegation of legislative authority" doctrine does not apply to § 5.07(C), because it is a constitutional provision that allocates a legislative power to a County legislative body that is directly responsible to the people. *See City of Eastlake v. Forest City Enterprises, Inc., supra; Yakus v. United States, supra.*

For the foregoing reasons, the court concludes that although plaintiffs may attempt to attack the County Council's action pursuant to § 5.07(C) as arbitrary and capricious, plaintiffs' facial challenges to the provision itself must fail as a matter of law.

Accordingly, defendants are entitled to summary judgment on this claim as a matter of law.

## II. *Equal Protection Claims*

■ Plaintiffs also claim that their equal protection rights have been violated by de-

fendants. First, plaintiffs claim that they were denied a special election because they could not pay the cost of such an election. Second, plaintiffs claim that the County Council granted an early special election to the Kauaians for Nukolii because it was wholly paid for by a private interest. Finally, plaintiffs contend that the applicable standard of review is one of strict scrutiny under *Bullock v. Carter*, 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972).

Defendants move for summary judgment, arguing that they are entitled to judgment as a matter of law, based on the following uncontroverted facts: (1) no group has ever been refused a special election because it could not pay for such an election; (2) plaintiffs lack standing, because they have never been refused a special election because of inability to pay; (3) defendants did not intentionally or purposefully discriminate against plaintiffs as a class; and (4) defendants' conduct constituted traditional, constitutionally protected lobbying/campaigning which does not violate equal protection.

Defendants also argue that even assuming a policy of discrimination existed, the applicable standard of review is that of "rational basis." Under that standard of review, defendants argue that there is no genuine issue of material fact as to the County Council's actions being rationally related to legitimate state interests.

Plaintiffs claim that their access to the ballot was blocked by discrimination based upon wealth. Accordingly, plaintiffs' claim of unequal treatment necessarily consists of two elements, both of which must be established: first, that plaintiffs were denied a special election because of an inability to pay such costs; and second, that the Kauaians for Nukolii were granted a special election because of their ability to pay the costs of holding such an election.

In relation to the alleged denial of plaintiffs' access to the ballot of the February 1984 special election, the court finds as follows:

First, plaintiffs have offered no competent evidence to show that they were denied in placing their own initiative on the 1984 special election ballot.

Second, plaintiffs cannot make such a claim, because it is undisputed that plaintiffs never even submitted a petition containing the required number of signatures to the County Council for certification. Accordingly, the County Council never even had the opportunity to consider, much less deny, plaintiffs' petition to place their own initiative on the special election ballot.

Finally, the only evidence before the court establishes that plaintiffs would have been granted equal access to the special election ballot, had they submitted their petition for certification. The minutes of the October 13, 1983 County Council meeting establish that the County Council refused to allow any conditions to be placed on the acceptance of funds from the Kauaians for Nukolii, and that the Committee to Save Nukolii would have been allowed to place its initiative on the special election ballot regardless of its ability or inability to pay.

In relation to the alleged denial of plaintiffs' request for a "special election" in 1980, the uncontroverted evidence before the court establishes the following facts: (1) when plaintiffs first submitted their petition in the beginning of 1980, they did not request a special election; (2) the County Council placed plaintiffs' initiative on the ballot of the upcoming November general election; (3) at the end of May, plaintiffs requested that their initiative be shifted to the primary election, which was forty-six days before the general election, and that the primary election be designated a special election; (4) the County Council denied plaintiffs' request; and (5) the initiative actually appeared on the general election ballot in November of 1980, received a majority of the votes cast, and became effective law.

Based on the foregoing undisputed facts, the court first finds that there is insufficient relationship between the County Council's decisions in 1980 and in 1984 to raise an issue of equal protection.

First, any claim that plaintiffs had been improperly denied a special election in 1980 was rendered moot by the fact that plaintiffs' initiative question actually appeared on the general election ballot, won the election, and became effective law. Even assuming for purposes of argument that plaintiffs had been wrongfully denied a special election in 1980, plaintiffs suffered no harm, and any possible dispute regarding the incident was rendered moot by plaintiffs' victory in the November election. Accordingly, the 1980 incident cannot serve as a basis for providing the requisite "case or controversy" for plaintiffs' equal protection claim.

Second, the undisputed facts above establish that the 1980 incident did not involve an actual petition for a special election, but merely a tardy request to shift a referendum question already on the general election ballot to the primary election ballot forty-six days earlier.

Finally, plaintiffs have failed to present any evidence to show that the County Council's decisions in 1980 and in 1984 were related and the results of an actual policy of discrimination based on wealth. In fact, the only competent evidence is to the contrary: only one member of the 1980 County Council, Mr. Sarita, was still a member of the County Council in 1983; and he voted *in plaintiffs' favor* in 1980.

Even if the court had found sufficient relationship between the County Council's decisions in 1980 and in 1984, plaintiffs have presented no evidence that the County ever required plaintiffs to pay the costs of placing their referendum question on the ballot of either the primary or the general election, or that plaintiffs were actually denied a special election because of their inability to pay.

First, Lani Soules' statement in her affidavit is not competent evidence based on personal knowledge, but merely unsupported speculation, as indicated by her prefatory words of qualification ("I am informed and believe . . .").

Second, Robert K. Yotsuda's comment in his letter of May 29, 1980, rather than establishing purposeful economic discrimination, instead evidences the County Council's concern over the uselessness of moving the initiative to the primary election ballot, where it would be voted on "only forty-six days prior to the date of the General Election."

Finally, even where costs are discussed in the County Council minutes, the discussion focuses upon how inexpensive shifting the initiative to the primary election would be; and there is absolutely no mention of costs barring such a shift, or of having the plaintiffs bear such cost.

Defendants, on the other hand, have presented evidence that the County Council denied plaintiffs' request because of its tardiness and the fact that moving the question to the primary election would not create any substantial benefit to the community, since the primary election was only forty-six days before the general election.

Accordingly, even if the 1980 incident were a denial of a petition for a "special election," and even if this denial were somehow connected to the granting of the special election in 1984, and even if plaintiffs claims relating to the 1980 incident were to survive the challenge of mootness, plaintiffs have still failed to offer anything more than bald, unsupported allegations to support their claim that they were denied a special election because of their inability to pay.

The court finds, therefore, that plaintiffs have failed to offer competent evidence sufficient to raise any genuine issues of material fact as to the actual denial of a special election because of inability to pay. Even assuming that the 1984 grant of a special election were somehow tied to the ability to pay, there is no evidence of any actual denial of ballot access caused by economic discrimination; thus, plaintiffs' claim that wealth discrimination has unfairly burdened their fundamental right to vote cannot survive.

Accordingly, there are no genuine issues of material fact, and defendants are entitled to summary judgment as a matter of

law on plaintiffs' claims for violation of equal protection rights.

### III. *Due Process Claims*

Plaintiffs further claim that irregularities in the conduct of the 1984 special election violated plaintiffs' rights to due process, to equal protection, to vote, and to secret ballot. Plaintiffs state the following claims: (1) Hawaii Rev.Stat. § 15–2 is unconstitutional for failure to provide sufficient guidelines to prevent violations of the balloting process; (2) the Kauaians for Nukolii's inclusion of the January 13th deadline in its ballot application brochures constituted fraud in the solicitation of absentee ballots; (3) scheduling the special election so soon gave the Kauaians for Nukolii an advantage over plaintiffs and in effect blocked plaintiffs' chances of mounting effective opposition and a counter-referendum; and (4) the County defendants denied plaintiffs equal access to the absentee voter and voter registration lists.

Defendants move for summary judgment on all of these claims, on the grounds that there are no genuine issues of material fact, and plaintiffs' claims of minor irregularities do not rise to constitutional proportions.

■ Under existing federal case law, for allegations of misconduct in the administration of a state election to constitute a claim for the deprivation of the right to vote or to constitute a claim under 42 U.S.C. § 1983, the election process itself must reach the point of "patent and fundamental unfairness." *Griffin v. Burns*, 570 F.2d 1065 (1st Cir.1978). Generally, there must be allegations of "purposeful deprivation" and of "intentional wrongful acts." *Donohue v. Board of Elections*, 435 F.Supp. 957, 966 (S.D.N.Y.1976).

■ Furthermore, the federal courts should avoid becoming arbiters of all election disputes over alleged irregularities. *Pettengill v. Putnam County R–1 School District*, 472 F.2d 121, 122 (8th Cir.1973); *Powell v. Power*, 436 F.2d 84, 86 (2nd Cir. 1970). Therefore, the mere existence of irregularities in a state election is not suffi-

cient to constitute a claim under 42 U.S.C. § 1983. *Hennings v. Grafton*, 523 F.2d 861, 864 (7th Cir.1975).

The court also looks to the California cases for guiding principles in the area of absentee voting.

■ First, the right to vote is so fundamental that a state legislature may enact reasonable measures to facilitate and increase its exercise; providing for absentee balloting is one such reasonable measure. *Peterson v. City of San Diego*, 34 Cal.3d 225, 666 P.2d 975, 193 Cal.Rptr. 533 (1983); *Beatie v. Davila*, 132 Cal.App.3d 424, 183 Cal.Rptr. 179 (1982); *Matter of Hernandez*, 138 Cal.App.3d 578, 188 Cal.Rptr. 45 (1982).

■ Second, the reasonable measure of absentee voting will be found violative of the right to vote only where there are no measures to protect the integrity of the absentee balloting procedure, and there is evidence of significant wrongdoing. *Peterson v. City of San Diego, supra; Beatie v. Davila, supra; Matter of Hernandez, supra.*

■ This court concurs in the reasoning of the *Peterson* court, that even if absentee balloting creates a greater potential for fraud, this does not warrant invalidation of absentee voting statutes reasonably designed to facilitate and increase exercise of the right to vote, especially where other measures, such as criminal laws, exist to protect the integrity of elections.

With the above principles in mind, the court now looks to each of plaintiffs' claims.

### A. *Unconstitutionality of H.R.S. § 15–2*

Plaintiffs claim that Hawaii Rev.Stat. § 15–2 is unconstitutional, because it allows every voter the right to opt for voting by absentee ballot regardless of the reason for doing so, and because it allows absentee voting in a way that fails to provide sufficient guidelines to prevent abuses of the process. Plaintiffs allege the following abuses: fraud in the solicitation of absen-

tee ballots; intrusion of partisan and non-governmental third parties into critical aspects of the election process; harassment and coercion of absentee voters; opportunities for tampering with and altering voted absentee ballots; violation of voters rights to secrecy in casting their absentee ballots.

█ The court finds that absentee balloting is a reasonable measure to facilitate and increase the exercise of the right to vote. The court next inquires as to whether Hawaii Rev.Stat. § 15–2 provides sufficient measures to protect the integrity of the absentee balloting procedure, and whether there is any evidence of significant wrongdoing.

The court first finds that Chapter 15 of the Hawaii Revised Statutes and the detailed regulations promulgated thereunder provide adequate measures to protect the integrity of the absentee balloting procedure.

Second, even drawing all inferences in favor of plaintiffs, the evidence before the court establishes, at most, a few minor irregularities in the voting process and only the mere potential for wrongdoing. Plaintiffs have presented no competent evidence of any actual, much less significant, wrongdoing.

Third, plaintiffs' claim that persons other than the absentee voter delivered about sixty of the absentee ballots, even if assumed to be true, raises no issues rising to constitutional proportions. Even the California case cited by plaintiffs did not find such conduct unconstitutional; that case merely held that a California statutory requirement, which is nonexistent in the Hawaii statutes, is violated when a person other than the absentee voter delivers the ballot. *Fair v. Hernandez, supra.*

Finally, it is undisputed that the relatively small number of absentee ballots delivered by persons other than the voter, of which only a fraction were returned by members of Kauaians for Nukolii, would have made no difference in the outcome of the election.

█ Based on the foregoing reasons, the court finds that the minor irregularities alleged here are insufficient to constitute a claim under 42 U.S.C. § 1983. *Donohue v. Board of Elections, supra; Hennings v. Grafton, supra.*

█ Accordingly, plaintiffs' claim that Hawaii Rev.Stat. § 15–2 is unconstitutional must fail, and defendants are entitled to summary judgment on this claim.

### B. *Fraud in Solicitation of Absentee Ballots*

█ Plaintiffs also claim that the brochures sent out by the Kauaians for Nukolii were a part of a deliberate and conscious policy on the part of the defendants "to mislead voters into believing that they had only until January 13, 1984, to apply for absentee ballots."

After having carefully studied the brochure in question, the court finds no misstatement or omission of fact concerning either the significance of January 13, 1984, or the organization responsible for the brochures. There was no representation that the January 13th date was the County's cut-off date. Furthermore, the brochure explicitly stated, "Paid for by: Kauaians For Nukolii Campaign Committee," and the applications were addressed to Kauaians for Nukolii.

Plaintiffs have offered only unsupported allegations of intentional misrepresentation by defendants and of state involvement in the action. Even drawing all inferences in plaintiffs' favor, the court finds that the evidence before it shows the Kauaians for Nukolii conducting traditional campaign activities, which do not constitute action "under color of state law." *Gorman Towers, Inc. v. Bogoslavsky,* 626 F.2d 607 (8th Cir. 1980).

Finally, plaintiffs have introduced no evidence of any actual harmful reliance on the January 13th date as the County's cut-off date; and anyone who might have misunderstood the brochure could have voted on February 4th in person.

Accordingly, plaintiffs' claim for fraud in the solicitation of absentee ballots cannot survive, and defendants are entitled to summary judgment.

### C. *The Timing of the Election*

 Plaintiffs further claim that the private defendants and the County defendants cooperated in holding the special election within an artificially short time in order to gain distinct advantages for proponents of the Kauaians for Nukolii referendum. Plaintiffs claim that because of lack of sufficient time, they were unable to raise money and organize, to comply with legal requirements to place a counter-referendum on the same ballot, or to conduct a widespread absentee ballot campaign.

While plaintiffs' affidavits indicate that they may have benefited from additional time before the special election, the court finds as a matter of law that the period of time from the setting of the special election to the actual date of the special election (November 17, 1983 to February 4, 1984) was not so short a period of time as to violate plaintiffs' constitutional rights and constitute a claim under 42 U.S.C. § 1983. This is especially true in light of the years of ongoing controversy and the tremendous advance newspaper publicity concerning the special election.

Accordingly, defendants are entitled to summary judgment on this claim.

### D. *Denial of Equal Access to Voter Lists*

Plaintiffs further claim that the County defendants refused until after the special election was over to give them copies of either the list of registered voters or the list of those who had applied for absentee ballots. They argue that this placed them at a disadvantage, because the Kauaians for Nukolii had the applications for absentee ballots mailed back to it and therefore knew the number of absentee ballots to be voted and the names of persons who would be voting by absentee ballot.

Defendants have offered evidence to show that there was no denial of equal access to any voter lists. Deputy County Clerk Shimomura states by affidavit that the Office of the County Clerk has never refused any member of the Save Nukolii Committee access to any records. He further states that the only requests denied were those for *copies* of the absentee voter and voter registration lists, and that such copies were not provided to *any* person because of lack of time and manpower necessary to copy the voluminous documents.

 Although the County Clerk may be required to allow inspection of the voter registration list, the County Clerk is not required to supply persons with copies of such lists.

 Furthermore, even if this court were to assume that plaintiffs were actually denied access to the lists, this would constitute, at most, a minor violation. Absent significant discrimination, this would constitute a mere election irregularity, not a purposeful deprivation of plaintiffs' constitutional rights, and would be insufficient to state a claim under 42 U.S.C. § 1983.

Plaintiffs have presented no evidence to show that the County defendants refused to provide plaintiffs with copies of the voter lists, while supplying such copies to other parties such as the Kauaians for Nukolii.

Accordingly, the court finds absolutely no showing that the County defendants blocked plaintiffs' access to the voter lists, much less intentionally discriminated against plaintiffs in denying such access, and defendants are entitled to summary judgment on this claim.

### IV. *Conflict of Interest/Impartiality Claim*

Plaintiffs allege in their complaint the absence of impartiality on the part of local government officials.

In the Order filed December 3, 1984, this court found plaintiffs' claims for conflict of interest/impartiality to be unsupported by the facts. At that time, however, the court ruled on the narrower ground of laches and did not grant defendants' motion for summary judgment on this particular claim. The court at that time stated as follows:

9. With respect to the seventh of the plaintiff's contentions, the conflict of interest on the part of county officials, the claim is made that Jerome Hew was a member of the Kauai County Council at which time he consistently voted for the development of a resort at Nukolii. Further, it is claimed that Tad Miura, treasurer of the Kauaians for Nukolii Campaign Committee, was the County Clerk from 1973 to 1979. Plaintiffs, therefore, allege that these defendants were not neutral in their handling of the election. *In the case of Mr. Hew, this Court finds that he was not on the Council when the special election was voted upon by the County Council. With respect to Mr. Miura, he was not even in government service when the election was called and held.* However, to the extent that these alleged conflicts of interest warranted investigation of the election, the Court reiterates that the plaintiffs could have brought such suit in the federal court prior to the election.

The only evidence now before the court on this issue is the affidavit of Chief Election Officer Jerome Hew, in which he states that he and all persons under his authority exercised their authority properly and impartially at all times relevant to the 1984 special election.

Although plaintiffs have stated in conclusory terms that defendants violated plaintiffs' right to due process by acting in an arbitrary, discriminatory, and partial manner, they have failed to provide the court with any evidence or even factual allegations regarding their claim of conflict of interest/impartiality.

Accordingly, defendants are entitled to summary judgment on this claim.

## CONCLUSION

Having found defendants entitled to summary judgment on the remainder of plaintiffs' claims, this court need not address the County defendants' immunity defenses.

For all of the foregoing reasons, IT IS HEREBY ORDERED that defendants' mo-

tions for summary judgment on the remainder of plaintiffs' claims be, and the same are, hereby GRANTED.

SO ORDERED.