# Supreme Court of the Navajo Nation

---

**Leonard Haskie, Appellant,**
**v.**
**Navajo Board of Election Supervisors, Appellee.**
**Decided January 11, 1991**

---

## OPINION

Before TSO, Chief Justice, BLUEHOUSE and AUSTIN, Associate Justices.

Gerri J. Harrison, Esq., Gallup, New Mexico, for the Appellant; and Claudeen Bates Arthur, Esq., Office of Legislative Counsel, The Navajo Nation, Window Rock, Navajo Nation, (Arizona), for the Appellee.

Opinion delivered by Tso, Chief Justice.

This is an appeal from a December 4, 1990 decision of the Navajo Board of Election Supervisors, dismissing a November 29, 1990 statement of grievance filed by Leonard Haskie, a candidate for the office of president of the Navajo Nation in the November, 1990 general election. The appeal arises under 11 N.T.C. § 321.B.4 of the 1990 Navajo Election Code.

## I. FACTS

Two candidates, Peterson Zah and Peter MacDonald Sr., emerged from the 1990 primary election as presidential finalists for the 1990 general election for president and vice-president of the Navajo Nation. Appellant Leonard Haskie (Haskie) received the third highest vote tally from the 1990 primary election.

The scenario changed, when on October 22, 1990, Peter MacDonald Sr. was convicted in the Window Rock District Court of criminal charges of bribery, kickbacks, and violations of the Navajo Nation Ethics in Government Law. On October 24, 1990, the Navajo Board of Election Supervisors (Board) revoked the certification of MacDonald as a presidential candidate and struck his name from the ballot for the 1990 general election.

On December 15, 1989, the Navajo Nation Council substantially amended Title Two, the organic governmental code of the Navajo Nation through Resolution No. CD-68-89. A new 2 N.T.C. § 873(b)6 gave the board the power to "establish rules and regulations and to interpret the Election Code consistent with Tribal laws." The subsequent revised Navajo Election Code of 1990 retained a power of the board to adopt rules and regulations, initially granted in Resolution No. CMY-60-66 on May 16, 1966. That power, embodied in the cur-

rent 11 N.T.C. § 322, provides as follows:

> The Board of Election Supervisors shall have the authority to make and enforce rules and regulations not inconsistent with this chapter [the election code] concerning any matter within the jurisdiction of such Board. Such regulations shall have the force and effect of laws of the Navajo Nation.

As the board organized to put the 1990 Navajo Election Code into operation to conduct council delegate and executive office elections, it addressed a time-honored election procedure — write-in votes. On April 26, 1990, the board adopted its Resolution No. BOESAP-006-90, "Approving Rules and Regulations Establishing 'Write-in' Procedures." In essence, those rules and regulations require proposed write-in candidates to file a declaration of intent to run as a write-in candidate, and to be so certified by the board.

Peter MacDonald Sr. selected George P. Lee as his vice-presidential candidate in the 1990 primary election. When MacDonald was decertified as a candidate, Lee declared his intent to run for the office of president in the general election as a write-in candidate. This event, coupled with Haskie's insistence that he be placed on the ballot in MacDonald's place, gave the board some very difficult choices. The board decided to allow Haskie to run as a regular candidate, with his name and photograph on the ballot.

On November 2, 1990, the board addressed Lee's October 29, 1990 grievance and decided that "fairness to the Navajo voters for the 1990 general election requires that you be allowed to run as a write-in candidate for the Navajo Presidential candidacy for this years [sic] election." That decision directed Lee to immediately submit "essential information" so that board certification of the write-in candidacy of Lee and his vice-presidential nominee could be "processed immediately."

The general election for the offices of president and vice-president of the Navajo Nation was held on November 20, 1990. On November 29, 1990, Haskie filed a statement of grievance contesting the outcome of that election. The board dismissed the grievance on December 4, 1990, by ruling essentially as follows: 1) Haskie's contentions were insufficient; 2) Haskie's challenge to Lee's candidacy as a write-in candidate was untimely; and 3) "a proper and orderly election was conducted." This appeal follows.

Haskie raises four assignments of error, which are summarized as follows: 1) The board has a mandatory statutory duty to certify candidates for president and vice-president, and the Lee-Tully write-in candidacy was invalid because the board failed to carry out that duty; 2) The Navajo Election Code requires the board to certify all candidates for president and vice-president prior to the date of the general election, and this was not done, voiding the Lee-Tully write-in bid; 3) The statement of grievance was timely because the board's November 2, 1990 decision letter was not a certification decision; and 4) The failure to certify Lee and Tully, as required by law, denied Haskie fair notice and a right to appeal the

certification, which violated his right to due process of law.

Based upon previous election contest decisions of this Court, the issues required to resolve this appeal are restated as follows: 1) Whether the write-in certification procedures were mandatory or merely directory, given that Haskie's statement of grievance was filed nine days after the general election of November 20, 1990; 2) Whether Haskie's statement of grievance was timely; and 3) Whether any errors of the board are such as to affect the outcome of the general election or make it unfair.

## II. INTERPRETATION OF ELECTION STATUTES

There are unique rules of statutory interpretation for election laws. The rules arise from the unique circumstances attendant to elections, such that the situation prior to an election is far different from that after an election. That is, it is easier to correct errors when they surface before an election than it is when they are raised after an election, when the electorate has already made its choice.

In 1983, the Court adopted the general rule of American election law. That rule is that election statutes are mandatory when enforcement is sought *prior* to an election, but they are read to be directory only when challenges are raised *after* an election. *Johnson v. June*, 4 Nav. R. 79, 81 (1983). The reason for this special rule of statutory construction is simple — the law presumes that elections which have already been held were conducted regularly and validly. *Id.*

Haskie cites the principle of law that statutes containing the term "shall" are mandatory and must be followed, citing *Navajo Nation v. Redhouse*, 6 Nav. R. 305 (1990), and *Mustach v. Navajo Board of Election Supervisors*, 5 Nav. R. 115 (1987). That proposition is correct as far as it applies, but *Redhouse* involved election challenges which were raised *before* an election. Also, the crucial question in *Redhouse* was whether the Council had followed the mandates of 2 N.T.C. § 164 when it passed a resolution fixing the 1990 Navajo Nation general election date for December 18, 1990. Thus, the statute to be interpreted was in Title Two, not in the Navajo Election Code.

*Mustach* concerned the board's failure to follow procedures outlined in the Navajo Election Code for hearing, reviewing and deciding election contests and disputes which are properly filed. There we said that those procedures set forth at 11 N.T.C. § 51A(7)(b) (repealed by 1990 Navajo Election Code) were mandatory and not discretionary with the Board. Unlike Mustach's case, Haskie's case is not concerned with the hearing procedure itself but primarily with the certification of Lee.

Haskie's challenge to the validity of the November 20, 1990 general election was brought to the board's attention on November 29, 1990. By then the board was required to read the applicable provisions of the Navajo Election Code of 1990, as well as its April 26, 1990 write-in rules and regulations, as being directory only. This method required the board (and this Court on appeal) to read the

provisions raised by Haskie in such a way as to support the results of the election, unless Haskie showed that the asserted errors were such as to obstruct a free and intelligent vote, obstruct ascertainment of the results of the election, deny an essential element required for a valid election, or otherwise void the election. *Johnson v. June*, 4 Nav. R. 79 (1983); *Navajo Election Comm'n v. Lancer*, 5 Nav. R. 59 (1985); *Brown v. Navajo Board of Election Supervisors*, 5 Nav. R. 139 (1987).

Therefore, assuming that the board did commit errors in the failure to certify the Lee-Tully ticket, the election provisions cited are now only directory. Haskie has failed to show how any oversight by the board in the certification process obstructed a free and intelligent vote, denied an essential element for a valid election, or otherwise voided the election. Haskie had the burden of proof to overcome the presumption that the election was regular and proper, as well as that of proving an invalid election under the provisions of the Navajo Election Code of 1990. *Williams v. Navajo Election Comm'n*, 5 Nav. R. 25, 27, 28 (1985).

Haskie failed to satisfy his burden, particularly when the events allowing Lee and Tully to run as write-in candidates were well known at least as of November 2, 1990, when the board ruled that Lee should be permitted to be a write-in candidate. Haskie admits that he was well aware of the board's decision to permit Lee to run in the general election as of November 2, 1990. Furthermore, an anxious Navajo public followed the events leading up to the 1990 general election, and the board's decision was a matter of general public knowledge.

## III. TIMELINESS OF THE CHALLENGE

Haskie admits, in his submissions to the Court, that his representatives closely followed the board's activities in regulating the 1990 general election, and that they were present when board decisions were made. The board's December 4, 1990 decision on Haskie's challenge shows that Haskie's representative was present during a hearing granted to Lee, and thus he knew what was taking place. The board concluded that Haskie should have filed his challenge within ten days of November 1, 1990, as required by 11 N.T.C. § 321.B.1.

Section 321.B.1 requires that "[w]ithin ten days of the incident complained of or the election, the complaining person must file with the Board a written complaint setting forth the reason why he believes the Election Code has not been complied with." The board has interpreted this statute to mean that if a candidate knows of an Election Code violation before an election, he or she must take action within ten days of such an incident rather than do so after the election. Given the reasons behind the rules on statutory interpretation of election laws, the board's interpretation makes sense. 11 N.T.C. § 321.A.6 and 2 N.T.C. § 873(B)6 both empower the board to interpret the Navajo Election Code consistent with Tribal laws.

Election appeals are, in their actual effect, the same as petitions for extraordi-

nary relief. When a dissatisfied candidate challenges an election, he or she is actually asking the court to enter a mandatory injunction or writ of prohibition to halt implementation of the results of an election. Therefore, there are principles of equity which support the board's interpretation of the election contest statute time requirements.

One such equitable principle is that of laches, which states that a court will not aid one who has "sat on his rights." Given the principle of law that election requirements are mandatory prior to an election but "directory only" following one, candidates must immediately assert their complaints within the ten-day period allowed by the statute or waive them.

The doctrine of laches is designed to prevent any harm which may result from changed circumstances following an event. The harm here is that a successful candidate, who is not before the Court, will have his presumptive right to hold office voided if Haskie's arguments are successful. That is the reason for the mandatory versus directory rule of statutory construction in election law, and the reason the doctrine of laches supports the board's conclusion that this challenge is untimely.

## IV. IMPEACHMENT OF THE ELECTION RESULTS

The board exercised its statutory authority under 11 N.T.C. § 321.B.1 to review Haskie's statement of grievance on its face for sufficiency under the Navajo Election Code. As noted, the board has the power to interpret the code as a matter of law, and Haskie's challenge raises questions of law upon facts which appear to be clear. The board concluded that the general election was "proper and orderly," and conducted as required by law, under unusual special circumstances. We cannot disturb that conclusion without a finding of a violation of the Navajo Nation Bill of Rights. 11 N.T.C. § 321.B.4; *Bennett v. Navajo Board of Election Supervisors*, 6 Nav. R. 319 (1990).

Haskie does raise an allegation of the denial of his due process right to fair notice. He states that if the board had properly certified Lee and provided notice of that act, he could have and would have acted. Such is a very strained interpretation of the important right to know of a deprivation of rights so the deprivation may be challenged.

Federal courts have heard due process and other constitutional challenges to elections, exercising their civil rights jurisdiction. Those courts have cautiously used that jurisdiction only where there have been aggravating factors, such as racial discrimination, fraudulent interference with a free election by ballot box-stuffing, or other unlawful conduct which interferes with the individual's right to vote. *Saxon v. Fielding*, 614 F.2d 78, 80 (5th Cir. 1980). In general, due process and other constitutional claims must establish that there has been "patent and fundamental unfairness" in the election process, "purposeful deprivation" of clear rights, or "intentional wrongful acts" in order to void an elec-

tion. *Soules v. Kauaians for Nukilii Campaign Committee*, 623 F. Supp. 657, 664 (D. Hawaii, 1985).

Haskie makes no claim that the board committed any intentional wrongful act, nor does he assert that there was any purposeful deprivation of his rights as a candidate. In essence he says that the board denied him fair notice of its decision so he could act to protect his rights. However, Haskie admits actual knowledge of the board's actions in allowing Lee to appear as a write-in candidate, and the board noted that he could have and should have acted prior to the election. The board is correct in its conclusion, and there is no due process violation with any substance to act upon.

Accordingly, the December 4, 1990 decision of the Navajo Board of Election Supervisors is affirmed.